NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GABRIEL GUTIERREZ CRUZ, *Appellant.*

No. 1 CA-CR 17-0060
FILED 2-15-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-102497-001
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

_____

**C A T T A N I**, Judge:

¶1            Gabriel Gutierrez Cruz appeals his conviction and sentence for misconduct involving weapons.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            In January 2015, police were monitoring a hotel in Phoenix when a detective saw a man later identified as Fernando Sepulveda place a duffle bag in the trunk of a white car, and then leave in a different car. About 10 minutes later, Cruz and a woman walked up to the white car, placed multiple bags in the trunk, then got in the car, with Cruz sitting in the driver's seat.  Police approached the car and arrested Cruz, who had been linked to a December 2014 armed robbery.

¶3            After obtaining a warrant to search the car, officers saw a .40 caliber handgun in plain view on the passenger side of the backseat.  In the trunk, they found an empty holster for the same model handgun and a magazine for a different model handgun, both in plain view.  Cruz told police that the car belonged to Sepulveda, but he also admitted that he had been driving the car the whole day before being arrested.  Cruz was a prohibited possessor at the time of the arrest.

¶4            The State charged Cruz with nine counts, eight stemming from the December 2014 armed robbery, and one for misconduct involving weapons stemming from the January 2015 arrest.  Following a jury trial, he was convicted of the misconduct involving weapons charge, but was acquitted of all other charges.  The superior court sentenced Cruz to 8.5 years in prison, and he timely appealed his conviction and sentence.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.

**DISCUSSION**

**I.    Improper Testimony.**

¶5          Cruz first contends that he is entitled to a new trial because the superior court failed to sua sponte strike—and/or instruct the jurors to ignore—testimony relating to a holster he was allegedly wearing when he was arrested. This claim fails because, although two holsters were admitted in evidence, one was withdrawn, and during closing argument, the prosecutor made clear that the misconduct involving weapons charge was based on the gun in the backseat and the holster in the trunk of the car Cruz admitted he had been driving. Cruz did not request that the limited testimony at issue be stricken, and he has not established fundamental, reversible error.

¶6          Shortly after Cruz's arrest, a detective prepared a report noting that Cruz was found with an empty holster on his hip and a single .40 caliber bullet in his pocket, but the report did not name the officer who found those items on Cruz. During his opening statement, the prosecutor told the jury that Cruz had a holster on his hip and a .40 caliber bullet in his pocket when he was arrested. The State's forensic expert, Heather Balsley, subsequently testified that she tested two holsters and determined that one of them contained a trace amount of blood. Ms. Balsley referred to each holster only by its seven-digit item number, and did not testify where either holster was found. The court admitted both holsters into evidence without objection.

¶7          Before presenting any further testimony relating to the holsters, the prosecutor notified the court that the State could not establish the necessary foundation for admitting in evidence the holster Cruz had been wearing and the bullet found in his pocket. When the court asked the parties how to proceed, Cruz's counsel did not request that Ms. Balsley's testimony be stricken, and instead simply pointed out that Ms. Balsley had not testified where either holster was found. Several days later, without objection or argument from the parties, the court withdrew one of the holsters from evidence and instructed the State not to mention it again. The court did not address whether to strike Ms. Balsley's testimony, which at that point was the only evidence of a holster other than the one officers found in the trunk of the car.

¶8          Because Cruz did not ask the court to strike Ms. Balsley's testimony or to instruct the jury to disregard any evidence of a second holster, he is not entitled to relief unless he demonstrates fundamental

3

error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). "Fundamental error is error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Bible*, 175 Ariz. 549, 572 (1993) (quotation omitted); *see State v. Gendron*, 168 Ariz. 153, 155 (1991) ("To qualify as 'fundamental error,' . . . the error must be clear, egregious, and curable only via a new trial."). To prevail under fundamental error review, the appellant must prove that (1) an error exists, (2) the error was fundamental, and (3) the error resulted in prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20.

¶9        Here, any arguable error was not fundamental. The court correctly withdrew the second holster from evidence after the prosecutor indicated the State did not have a witness who could establish that Cruz was wearing the holster when he was arrested. The other holster, which was found in the trunk and was designed for the same make and model as the gun found in the car, correctly remained in evidence. The jury heard only twice about the existence of *two* holsters—first, during the State's opening statement that police found one holster on Cruz's hip and another in the car's trunk, and again during Ms. Balsley's testimony describing testing done on the two holsters.

¶10        The prosecutor's reference to the second holster did not result in fundamental error primarily because a party's opening statement is not evidence. *State v. Bowie*, 119 Ariz. 336, 339–40 (1978). The jurors were instructed to that effect, and we thus presume they did not rely on the prosecutor's statement that Cruz was found wearing a holster. *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996). Although the jurors may have been anticipating testimony and other evidence about two holsters, the only testimony Ms. Balsley offered was that *one* holster—identified by its seven-digit item number—contained traces of blood, and that *another* holster—again identified by a seven-digit item number—did not contain blood. Ms. Balsley did not testify where either holster was found, and following her testimony, the only holster mentioned to the jury was the one found in the trunk.

¶11        Further, the court gave both parties several days to suggest how to undo the effects of the wrongfully admitted holster, after which neither party offered any remedial measures beyond withdrawing the holster from evidence and agreeing not to mention it again. As noted, the State did not reference the second holster during closing or rebuttal argument, and in fact specifically referenced only the holster found in the trunk, noting that "you have the defendant two weeks later found in the car

with the .40-caliber handgun, with a holster in the trunk that matched the handgun," and "[t]aking into account what's in the trunk and what wasn't put there by Mr. Sepulveda was the holster that went with that gun." Thus, the theory underlying the weapons charge was properly argued as relating to the gun and the properly admitted holster, and Cruz has not established fundamental error based on the superior court's failure to sua sponte strike Ms. Balsley's testimony or to instruct the jury to disregard evidence of a second holster. Moreover, defense counsel's failure to request that the court strike the testimony or instruct the jury to disregard the evidence could well have been a strategic decision that doing so would simply have called the jury's attention to the second holster. Given these considerations, the court did not err by not striking the testimony or further instructing the jury absent a request by counsel to do so.

**¶12**      Finally, even assuming error, any confusion regarding the two holsters was of marginal significance, and given the prosecutor's emphasis in closing argument on the holster found in the trunk, Cruz has not shown prejudice warranting reversal of his conviction.

## II.      Sufficiency of the Evidence.

**¶13**      Cruz also contends that there was insufficient evidence to support the jury's finding that he knowingly possessed the gun found on the backseat of the car. We review a claim of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We will uphold the conviction if substantial evidence—that which is sufficient to support a reasonable juror's finding of guilt beyond a reasonable doubt—supports it. *State v. Scott*, 177 Ariz. 131, 138 (1993).

**¶14**      The State may prove misconduct involving weapons by showing that the defendant knowingly possessed a deadly weapon, and that he was a prohibited possessor at the time of the charged possession. A.R.S. § 13-3102(A)(4). Because Cruz stipulated that he was a prohibited possessor, the only issue before the jury was whether he knowingly possessed the gun.

**¶15**      "Possession may be actual or constructive." *State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 9 (App. 2013). While actual possession requires a defendant to have direct physical control over an object, the defendant can have constructive possession if he exercises dominion or control over it, even if it is not in his actual physical possession. *State v. Cox*, 214 Ariz. 518, 520, ¶¶ 9–10 (App. 2007) (defining dominion as "absolute ownership," and control as "to have power over"). Although constructive possession may

be proven by circumstantial evidence, the State must show more than the defendant's mere presence where the prohibited item was found. *Gonsalves*, 231 Ariz. at 523, ¶ 10.

¶16     Here, police officers approached Cruz after he got in the driver's seat of the car and closed the door. The black and silver handgun was in plain view on the cream-colored backseat. Because it was placed on the passenger side of the backseat, the gun was not only clearly visible to Cruz as he entered and sat down in the car, but also was easily accessible to him. Additionally, Cruz had been driving the car for a full day, and he had used the car's trunk, where officers found a matching holster and a handgun's magazine in plain view. Thus, there was substantial evidence from which the jury could infer that Cruz knowingly possessed the weapon.

¶17     Although Cruz did not own the car and there was evidence that the car's owner, Sepulveda, accessed the trunk shortly before Cruz was arrested, there was no evidence that Sepulveda entered the passenger compartment or placed the gun in the backseat without Cruz's knowledge. And even if the gun belonged to Sepulveda, Cruz could nevertheless constructively possess it by keeping it in the car while he was in control of the car. *See State v. Teagle*, 217 Ariz. 17, 27, ¶ 41 (App. 2007); *see also Gonsalves*, 231 Ariz. at 523, ¶ 9 (two people may have simultaneous constructive possession of the same prohibited object). Accordingly, reasonable jurors could have concluded that Cruz knew of, and had control over, the handgun in plain view on the backseat of the car he had been driving for the past day.

**CONCLUSION**

¶18     We therefore affirm Cruz's conviction and sentence.

